STATE, RESPONDENT, *v.* RUSSELL, APPELLANT.

(No. 5,663.)

(Submitted March 27, 1925. Decided April 22, 1925.)

[235 Pac. 712.]

*Criminal Law — Rape—Jury — Selection — Qualifications of Jurors—Discretion.*

Rape—Juror not Disqualified from Serving on Subsequent Case by Serving on Prior One Where Prosecutrix is Same.

1.　A juror who served on the trial of a rape case is not disqualified, as for implied bias, from serving as such in a subsequent one against another defendant for a like offense against the same prosecutrix. (MR. JUSTICE GALEN dissenting.)

Same—When Juror not Disqualified for Actual Bias.

2.　Where one had served as a juror in a prosecution for rape he was not disqualified, as for actual bias, from serving in the same capacity in a later case of the same character against another defendant in which the prosecutrix was the same as in the first, by the fact that on the former trial evidence of the guilt of the latter defendant had been introduced. (MR. JUSTICE GALEN dissenting.)

Same—When Juror Disqualified to Serve.

3.　The constitutional provision (Art. III, sec. 16) that one accused of crime shall have the right to trial by an impartial jury is a limitation upon the power of the legislature and it is beyond its power to curtail it; hence, where it clearly appears from the examination of a juror on his *voir dire* that some circumstance or connection with the case renders him unfit to serve, he should be disqualified even though the cause does not fall within any of those specified in the statute.

Same—Qualifications of Juror—Discretion.

4.　Since the examination of a juror on his *voir dire* is simply the taking of testimony on the issues raised as to his qualifications to serve, the court's determination of the question is governed by the same rules as obtain in reviewing any other finding. The matter is largely one of sound legal discretion, and its finding will not be set aside unless error is manifest or a clear abuse of discretion is shown.

---

1.　Competency of jurors who have served in same or similar case, see notes in 4 **Ann. Cas.** 965; 68 **L. R. A.** 871.

Effect of sitting as juror in trial of one person as disqualification to serve as juror in trial of another person based on same transaction, see note in 19 **A. L. R.** 1065. See, also, 16 **R. C. L.** 260.

3.　Power of legislature to regulate or dispense with jury trial, see notes in 48 **Am. Dec.** 185; 58 **Am. Dec.** 791; 98 **Am. St. Rep.** 538.

Legislative regulation of qualifications of jurors as violating constitutional guaranty of right to trial by jury, see note in **Ann. Cas.** 1912C, 784.

4.　See 16 **R. C. L.** 289.

[73 Mont. 240.]

Same—Qualification of Juror—Duty of Appellant to Show Abuse of Discretion by Trial Court.

    5.  It is the duty of an appealing defendant convicted of crime to make the record show prejudicial error; therefore where the transcript was silent as to what evidence was produced in the first prosecution for rape referred to above (pars. 1 and 2) implicating defendant in the second case which, as claimed, rendered the juror who heard it unfit to serve, the supreme court cannot say that the trial court abused its discretion in accepting the juror as qualified.

---

Criminal Law, 17 C. J., sec. 3580, p. 238, n. 26; p. 240, n. 31.

Juries, 35 C. J., sec. 165, p. 237, n. 91; sec. 345, p. 325, n. 18; p. 326, n. 19; sec. 427, p. 382, n. 77.

*Appeal from District Court, Beaverhead County; Jos. C. Smith, Judge.*

C. D. RUSSELL was convicted of statutory rape and appeals. Affirmed.

*Mr. W. G. Gilbert* and *Mr. T. F. McFadden,* for Appellant, submitted a brief and one in reply to that of the State; *Mr. McFadden* argued the cause orally.

A juror who has served on the trial of a prosecution for statutory rape is disqualified to serve on a subsequent prosecution against another defendant for a similar offense, where the testimony of the same prosecuting witness is relied upon to sustain the prosecution in each case. (*Priestly* v. *State,* 19 Ariz. 371, 3 A. L. R. 1201, 171 Pac. 137; *Roberts* v. *State,* 4 Ga. App. 378, 61 S. E. 497; *Green* v. *State,* 54 Tex. Cr. 3, 111 S. W. 933; *Hardgraves* v. *State,* 61 Tex. Cr. 422, 135 S. W. 144; *State* v. *Hammon,* 84 Kan. 137, 113 Pac. 418.)

A juror who has served on the trial of a prosecution for statutory rape is disqualified to serve in a subsequent prosecution against a different defendant, for a like offense, though the defenses are distinct, where evidence of the guilt of the later defendant was before the jury in the first prosecution. (*Drye* v. *State,* 40 Tex. Cr. 125, 49 S. W. 83; *People* v. *Mol,* 137 Mich. 692, 4 Ann. Cas. 960, 68 L. R. A. 871, 100 N. W. 913.)

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angst-
man* and *Mr. I. W. Choate,* Assistant Attorneys General, sub-
mitted a brief in behalf of the State; *Mr. Angstman* argued
the cause orally.

Citing: *State* v. *Van Waters,* 36 Wash. 358, 78 Pac. 897;
*Fletcher* v. *Commonwealth,* 106 Va. 840, 56 S. E. 149;
*Turner* v. *State,* 114 Ga. 421, 40 S. E. 308; *People* v. *Al-
bers,* 137 Mich. 678, 100 N. W. 908; *State* v. *Reese,* 2 Boyce
(Del.), 434, 79 Atl. 217; *State* v. *Drakeford,* 162 N. C. 667, 78
S. E. 308; *Venn* v. *State,* 85 Tex. Cr. 151, 210 S. W. 534; *Eng-
man* v. *State* (Tex.), 180 S. W. 235; *State* v. *Austin,* 83
Wash. 444, 145 Pac. 451; *Camp* v. *United States,* 297 Fed.
452; *Wilkes* v. *United States,* 291 Fed. 988; 35 C. J., sec. 345.

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

On the trial of defendant for statutory rape, four pros-
pective jurors disclosed on *voir dire* examination that they
had served as jurors in a case theretofore tried in which
one Chambers had been convicted of a like offense against
the complaining witness in the case at bar. A challenge
for cause on this ground was interposed to each and by
the court overruled. On further examination each of these
prospective jurors then answered that he had heard the
complaining witness state, in the *Chambers Case,* that she
had had sexual intercourse with the defendant in this case.
Each, however, testified unequivocally that he had neither
formed nor expressed an opinion as to the guilt or innocence
of this defendant, and that he could fairly and impartially
try the case solely upon the evidence adduced on the trial
and the law as given by the court. The challenge to each
of these jurors was, after such further examination, re-
newed and again denied. Defendant duly excepted to the
rulings of the court, and thereafter exhausted his peremp-
tory challenges without withdrawing these four jurors. On

submission of the case to the jury, defendant was found guilty. He moved for a new trial, which motion was denied. This appeal is from the judgment and from the order overrling the motion for a new trial.

Error is predicated upon the court's action in denying each of the several challenges for cause; in denying the motion for a new trial, and in pronouncing judgment against defendant. The specifications of error, however, present but two questions, which are propounded by counsel for defendant in their brief as follows:

"(1) Is a juror, who served on the trial of a prosecu-[1, 2] tion for statutory rape, disqualified to serve on a subsequent prosecution against another defendant for a similar offense, where the testimony of the same prosecuting witness is relied upon to sustain the prosecution in each case?"

"(2) Is a juror, who has served on a trial of a prosecution for statutory rape, disqualified to serve in a subsequent prosecution against a different defendant, for a like offense, though the defenses are distinct, where evidence of the guilt of the latter defendant was before the jury in the first prosecution?"

Of course, the nature of the charge is immaterial; the same rules of law must be applied in the selection of a jury on a trial of the charge of statutory rape as on any other criminal prosecution. The question is merely, What grounds of challenge for cause may be successfully urged in any criminal case? The legislature has · attempted to state all of such grounds. These are divided, by section 11957, Revised Codes of 1921, into "general" and "particular" causes for challenge; we are concerned here with the second division only.

"Particular causes of challenge are of two kinds—1. For such a bias as, when the existence of the facts is ascertained, in judgment of law disqualifies the juror, and which

is known in this Code as implied bias. 2. For the existence
of a state of mind on the part of the juror in reference
to the case, or to either of the parties, which will prevent
him from acting with entire impartiality and without preju-
dice to the substantial rights of either party, which is known
in this Code as actual bias." (Sec. 11959, Rev. Codes
1921.)

Section 11960 designates the causes of challenge for "im-
plied bias," among which are: "4. Having served on the
grand jury which found the indictment, or on a coroner's
jury which inquired into the death of a person whose death is
the subject of the indictment or information. 5. Having
served on a trial jury which has tried another person for the
offense charged. 6. Having been one of a jury formerly
sworn to try the same charge. * * * 7. Having served as
a juror in a civil action brought against the defendant for the
act charged as an offense."

Section 11962 requires that: "In a challenge for implied
bias, one or more of the causes stated in section 11960 must
be alleged. In a challenge for actual bias, the cause stated
in the second subdivision of section 11959 must be alleged;
but no person shall be disqualified as a juror by reason
of having formed or expressed an opinion upon the mat-
ter or cause to be submitted to such jury, founded upon
public rumor, statements in public journals, or common
notoriety, provided it appear to the court, upon his declara-
tion, under oath or otherwise, that he can and will, not-
withstanding such opinion, act impartially and fairly upon
the matters to be submitted to him."

Of the conditions set forth in the two questions pro-
pounded by counsel, if they be causes for challenge, the
first would come under the definition of "implied bias," the
second under that of "actual bias."

1. It will be readily seen, by a comparison of the alleged
cause for challenge in the first question presented with the

above-quoted causes of challenge for "implied bias," that the challenge did not allege any one of the statutory causes, and therefore does not comply with the requirement of section 11962, that "one or more of the causes stated in section 11960" must be alleged.

The general rule on this precise challenge, with no exception stated nor contrary decision cited, is laid down in Corpus Juris, as follows: "A juror is not incompetent because he has previously served upon the trial of another defendant charged with a separate and distinct offense, although of the same character, and proved by the same witness or witnesses" (35 C. J. 325, sec. 345), and is upheld in the following cases: *State* v. *Van Waters,* 36 Wash. 358, 78 Pac. 897; *Bailey* v. *State,* 56 Tex. Cr. 226, 120 S. W. 419; *Irvine* v. *State,* 55 Tex. Cr. 347, 116 S. W. 591; *Fletcher* v. *Commonwealth,* 106 Va. 840, 56 S. E. 151; *Rose* v. *Commonwealth,* 106 Va. 850, 56 S. E. 151; *Turner* v. *State,* 114 Ga. 421, 40 S. E. 308; *People* v. *Albers,* 137 Mich. 678, 100 N. W. 908; *Venn* v. *State,* 85 Tex. Cr. 151, 210 S. W. 534.

The case of *State* v. *Van Waters, supra,* is practically identical with the case before us. The court, after stating that a juror who served upon the trial of another person for the same offense would be disqualified, continued: "But no such condition appears in the case before us. These were two distinct and separate crimes, committed at different times, having no relation, one with the other, save that they were of the same character and were committed on the same person. A juror, who had been convinced of the guilt of the defendant in the first, could not, from that fact alone, have any knowledge or opinion as to the guilt or innocence of the defendant in the second, and, of course, would not be disqualified for that reason."

In *Fletcher* v. *Commonwealth, supra,* the court said: "The mere fact that members of the panel had at the same term of the court tried similar cases proved by the same wit-

nesses who testified against him does not of itself constitute error.''

Counsel for defendant cite the following authorities as supporting the contrary rule: *Priestly* v. *State,* 19 Ariz. 371, 3 A. L. R. 1201, 171 Pac. 137; *State* v. *Hammon,* 84 Kan. 137, 113 Pac. 418; *Roberts* v. *State,* 4 Ga. App. 378, 61 S. E. 497; *Green* v. *State,* 54 Tex. Cr. 3, 111 S. W. 933; *Hardgraves* v. *State,* 61 Tex. Cr. 422, 135 S. W. 144. These cases, however, while containing language sustaining counsel's contention, support, and seem to have been decided under, a different rule laid down in Corpus Juris, and under which the *Priestly Case* is cited as supporting the rule; the *Hammon Case* being cited in the *Priestly Case* for the same purpose; this rule being a corollary to the rule last quoted; *i. e.:* ''As a general rule, however, where the two cases arise out of the same transaction and involve the same issues or are determined by the same evidence, the juror is incompetent.'' Thus, in the *Priestly Case,* the court said: ''Having passed upon the credibility of witnesses in a similar case upon substantially the same testimony, and having therefore rendered a verdict on their oaths, it is not to be believed that they could sit upon this case with such an opinion previously formed without it influencing their action. * * * So connected and mingled were these offenses and the circumstances related by the witnesses that the trial of the case of Duff was practically a trial of the case of Priestly.''

Likewise in the *Hammon Case,* which was a rape case in which the evidence showed that the two defendants had each committed the crime charged while the two were riding in a hack with two girls, the court based its ruling on its statement that ''going back, as this trial did, almost, if not entirely, of necessity to the beginning of the drive, it might be said that to quite a material extent the trial of appellant was a retrial of V., so connected and mingled

were the two offenses and the facts and circumstances surrounding them.''

In the *Roberts Case,* on *voir dire* examination, counsel for defendant offered to show that one Cooper was the only witness relied upon by the state for a conviction in a liquor case, that he had previously testified in two like cases in which he had been impeached, and the same impeaching evidence would be introduced in this case, and on this showing desired to interrogate jurors who had served on the other cases .as to whether they had already determined whether the witness was worthy of belief, and whether they were unbiased in the matter of the impeaching evidence. The trial court refused leave to make the showing or so interrogate the witnesses. This was held error.

In the *Green Case,* a person under arrest for larceny made an arrangement with the county. attorney to secure evidence of liquor violations, in return for his discharge and a cash consideration; a large number of arrests were made on his complaint; a number of cases had been tried in which this man was the only witness. Green was called to trial and offered a selection of a jury of six men out of but twelve, six of whom had served in other cases and who had repeatedly passed upon the credibility of the state's sole witness. His challenges were overruled, and the appellate court held that he was not accorded an impartial jury.

The *Hardgraves Case* was similar to the *Green Case;* the defense was not permitted to inquire as to whether the jurors had formed an opinion as to the credibility of the state's witness.

No one of the cases cited is therefore at variance with the rule stated first above from Corpus Juris, nor applicable to the facts in the case at bar.

2. The second question presented is whether a juror is disqualified for ''actual bias'' from serving in the particular case, by reason of having theretofore, in another case, heard

the complaining witness state an ultimate fact which would show that defendant was guilty of the crime charged. The statement of the question answers it.

The condition of the juror which disqualifies him for this cause is "the existence of a state of mind * * * which will prevent him from acting with entire impartiality." While hearing such testimony may be equivalent to discussing the facts with the complaining witness, the juror is not disqualified by what he has heard, but only when what he has heard has induced the state of mind which will prevent him from acting with entire impartiality.

3. This brings us to a third question, presented by the circumstances of this case, and in which are involved both of the questions heretofore discussed, to-wit: Does the record presented show that the jurors thus challenged were, notwithstanding the fact that the challenges do not come within any of the grounds provided by the statute, so partial that we can say that the trial court abused its discretion in permitting them to serve?

Section 16, Article III, of the Constitution of Montana, provides: "In all criminal prosecutions the accused shall have the right to * * * a speedy public trial by an impartial jury," etc. And it has been held under like provisions in other states that "although the statute professes to give all the grounds of challenging a juror for cause, the constitutional guaranty of an impartial jury will not be allowed to be destroyed by the Legislature's omission of grounds that clearly render the juror incompetent." (16 R. C. L., sec. 75, p. 257; *Gaff* v. *State,* 155 Ind. 277, 80 Am. St. Rep. 235, 58 N. E. 74; *Johnson* v. *State,* 1 Okl. Cr. 321, 18 Ann. Cas. 300, 97 Pac. 1059.)

The constitutional provision is a limitation upon the power [3] of the legislature. (Cooley's Constitutional Limitations, p. 10; *State* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078.) "The right to trial by an impartial jury, every member

of which is impartial, given by the Constitution, * * *
is an unqualified one. * * * It is beyond the power of
the Legislature to curtail the right." (*State* v. *Brooks,* 57
Mont. 480, 188 Pac. 942.)

If, then, it clearly appears from the examination of a
juror on his *voir dire* that some circumstance or connection
with the case renders him unfit to serve, he should be dis-
qualified, even though the same does not fall within any
one of the causes provided in the statute. And if, on the
question of the state of mind of a prospective juror who
has heard a witness state, as in this case, facts which, if
believed, establish the defendant's guilt, the trial court has
any doubt as to the existence of such a state of mind as
would disqualify the juror, the court should sustain the
challenge to such juror.

In the case of *Hammon* v. *State, supra,* the statement is
made, and is adopted in the case of *Priestly* v. *State, supra,*
after considering the facts and surrounding circumstances in
each of these cases, that "answers by these jurors to cate-
gorical questions, though doubtless intended to be truthful,
are less convincing than the known nature and tendency of
the human mind." The facts presented to the courts in
those cases perhaps warranted them in disbelieving the testi-
mony of the jurors as to their state of mind, and in saying
that the trial court abused its discretion.

The examination of a juror on his *voir dire* is no more
[4] nor less than the taking of testimony on the issues
raised as to his qualifications to serve in the case before
the court. (*Putnam* v. *Pacific Monthly Co.,* 68 Or. 36,
Ann. Cas. 1915C, 256, 45 L. R. A. (n. s.) 338, 130 Pac. 986,
136 Pac. 835.) The determination must be left largely to the
sound discretion of the trial court (*Scribner* v. *State,* 3 Okl.
Cr. 601, 35 L. R. A. (n. s.) 985, 108 Pac. 422; *Commonwealth*
v. *Minney,* 216 Pa. 149, 116 Am. St. Rep. 763, 65 Atl. 31);
and, in determining the question, the trial court, as in

passing upon any other question of fact established by oral testimony, has the advantage of observing the witness on the stand, his demeanor and candor, or lack of candor, and a review of the court's rulings and findings should be governed by the same rules as in reviewing any other findings and judgment based thereon. They should not be set aside unless error is manifest, or there is shown a clear abuse of discretion. See 16 R. C. L., section 104, and cases cited, where it is said: "It is a familiar rule that, where there is evidence to support the findings of the court on the question, its decisions should be affirmed,"—citing *Hopt* v. *Utah,* 120 U. S. 430, 30 L. Ed. 708, 7 Sup. Ct. Rep. 614 [see, also, Rose's U. S. Notes]; *State* v. *Pearce,* 87 Kan. 457, Ann. Cas. 1913E, 358, 124 Pac. 814.

There is nothing before us to show what evidence was produced in the *Chambers Case,* nor under what circumstances the name of defendant in this case was mentioned. It is probable that the statement of the prosecuting witness that she had intercourse with this defendant, and others, was brought out in cross-examination, as was done regarding Chambers and others in this case. The trial court had the advantage of knowing the circumstances, as the *Chambers Case* was tried in the same court but two days previous; this advantage we do not have.

It is not at all contrary to human experience that fairminded men could truthfully say, after hearing evidence sufficient on which to convict another of a like crime against the complaining witness, and even hearing her state that she had also had intercourse with this defendant, that they could and would fairly and impartially try the defendant on the evidence produced on the trial, or that they would do so in fact. The trial court evidently believed their statements, and we cannot say, on the cold record, that there was any abuse of discretion, or that the defendant's constitutional right has been denied him.

[73 Mont. 240.]

We have carefully examined the record, and are of the opinion that the evidence clearly established the guilt of the defendant beyond a reasonable doubt; no other result should have been reached by any jury of fair-minded, law-respecting men.

Section 12125, Revised Codes, declares that "after hear-[5] ing the appeal, the court must give judgment without regard to technical errors or defects, or to exceptions, which do not affect the substantial rights of the parties." In *State* v. *Byrd,* 41 Mont. 585, 111 Pac. 407, after quoting the above section, it is said: "It is for this court to determine whether an error affects the substantial rights of the defendant. If the point can be decided from an inspection of the record, the court may act accordingly; but it is the duty of the defendant who claims prejudice to make the record so show."

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY and STARK concur.

MR. JUSTICE GALEN, dissenting: I dissent. The Bill of Rights of the people of this state accords a person accused of crime "a speedy public trial by an impartial jury." (Sec. 16, Art. III, Constitution.) No provision of our Constitution is of more profound significance in the administration of justice. The accused is entitled to trial before twelve impartial men. (*State* v. *Mott,* 29 Mont. 292, 74 Pac. 728.)

"The right to trial by an *impartial* jury, every member of which is impartial, given by the Constitution, * * * is an unqualified one, which it is beyond the power of the Legislature to curtail, and any provisions of the statutes which relate to the selection of a jury are to be understood as merely providing the means by which the constitutional guaranty may be exercised to the fullest extent." (Syllabus in

*State* v. *Brooks,* 57 Mont. 480, 188 Pac. 942.) In the case just cited, Mr. Justice Holloway, speaking for this court, well said: "The constitutional right to trial by an impartial jury is an unqualified one. The guaranty of that right is found in our Bill of Rights, which declares the fundamental principles necessary to the protection of liberty and the security of government, and which, to all people of the Anglo-Saxon race, are their heritage from the great charter of English liberty." (Page 487; 188 Pac. 943.)

The majority opinion concedes, as it must, the dominance of the constitutional guaranty over the prescribed statutory grounds of challenging a juror; but, in construing the statutes, and citing authority from other courts tending to support the conclusion reached, the plain object of the constitutional guaranty is utterly disregarded. I agree that it is not contrary to human experience that *"fair-minded men could truthfully* say, after hearing evidence sufficient on which to convict another of a like crime against the complaining witness," and even after hearing her state that she had also intercourse with this defendant, that they could and would try this defendant fairly and impartially on the evidence produced on the trial.

However, conversely, human experience teaches us that one of the most common things in life is for men to deal with others on the basis of reputation, either general or specific. Indeed, there is a marked tendency on the part of humankind to believe one capable of doing a certain act under given circumstances, when it is shown that he has done like acts before. Here the jurors who were challenged had already heard such evidence against the defendant, and had resolved in favor of the *credibility* of the prosecutrix. Notwithstanding their undoubted honest effort to try the defendant impartially, they must have entered upon that duty with minds somewhat adverse to defendant. Under such circumstances the trial court should have been quick to excuse

the jurors, even in the absence of challenge made by defendant's counsel. Proper regard for the orderly administration of justice is not aided by trying a person accused of crime before a jury composed like the one under consideration. The credibility of the prosecutrix was the principal matter for the jury's consideration, for upon her testimony alone the defendant's guilt or innocence was to be determined.

"There is no class of prosecutions attended with so much danger, or which affords so ample an opportunity for the free play of malice and private vengeance. In such cases the accused is almost defenseless." (*People* v. *Benson,* 6 Cal. 221, 65 Am. Dec. 506.)

It cannot be said the defendant was accorded "trial by an impartial jury," such as was his right guaranteed by the Constitution.

Defendant's challenges should have been sustained and the four jurors excused.