Harold W. MARTIN, Petitioner,

v.

Ira M. COINER, Warden, West Virginia Penitentiary, Respondent.

Civ. A. No. 2499.

United States District Court
S. D. West Virginia,
Huntington Division.

May 9, 1969.

554

Menis E. Ketchum, Greene, Ketchum, Baker & Pauley, Huntington, W. Va., for petitioner.

Chauncey H. Browning, Jr., Atty. Gen. of West Virginia, Charleston, W. Va., for respondent.

CHRISTIE, District Judge:

This proceeding comes before the Court on a petition for habeas corpus filed *in forma pauperis* by Harold W. Martin, a prisoner of the State of West Virginia, pursuant to the provisions of 28 U.S.C.A. § 2241. Petitioner having exhausted his state court remedies, seeks relief in this court upon the following allegations:

(1) That the trial court erred in allowing him to plead guilty before determining whether or not he was competent to make such a plea;

(2) that he was not sane at the time he committed the crime with which he was charged;

(3) that he was coerced into a plea of guilty by the court-appointed attorneys and the prosecuting attorney; and

(4) that he was denied the right to employ counsel at his preliminary hearing.

An evidentiary hearing was held before this Court on February 18 and 19, 1969, and the Court has been furnished with copies of the state court proceedings. After hearing the evidence and reviewing the record, it is the opinion of the Court that there is no merit to petitioner's contentions.

On May 9, 1967, petitioner robbed a drug store in Huntington, West Virginia. Evidence was introduced at the hearing which indicated that at the time of the robbery petitioner, who has a history of alcoholism, was drinking and taking meprobomate tablets. Thereafter, petitioner

was apprehended in Chicago, Illinois, on May 17, 1967, and after waiving extradition, he was brought back to Huntington on May 25, 1967. On May 26, 1967, he was taken before a justice of the peace where he waived a preliminary hearing and was bound over to the grand jury. Petitioner did not make any plea at the hearing nor was any testimony offered. On June 16, 1967, petitioner was indicted for armed robbery and thereafter had two attorneys appointed to represent him. On June 28, 1967, and on subsequent dates, petitioner consulted with his attorneys concerning his defense. At no time during these consultations did either attorney observe any behavior on the part of petitioner which indicated the presence of a mental abnormality, however, petitioner did request his attorneys to seek a mental examination for him in order to determine why he had committed the acts with which he was charged. The attorneys communicated this request to the trial judge on July 3, 1967, the day petitioner entered his plea of guilty, but it was apparently the practice of the judge to order commitments for observation only after a plea had been made. Consequently, petitioner was not committed to the Weston State Hospital for mental observation until after he had pleaded guilty to the charge of armed robbery.

At the time petitioner was indicted for armed robbery, several other charges were pending against him and, as a consequence, his attorneys consulted with the prosecuting attorney to determine what effect a plea of guilty would have on these other charges. The prosecuting attorney informed them that in the event petitioner pleaded guilty the other charges would be dropped. Petitioner's attorneys informed him of the position of the prosecuting attorney with respect to the other charges and advised him that in their opinion his best course of action would be to plead guilty. At the same time, they informed him that he had a right to plead not guilty and to submit his case to a jury. The choice was left to petitioner whose decision, based upon such advice, was to plead guilty.

On July 3, 1967, petitioner pleaded guilty to the charge of armed robbery. Sentencing was deferred and an order was entered directing the sheriff of Cabell County to transfer petitioner to the Weston State Hospital for examination, observation and treatment by psychiatrists. Petitioner was thereafter taken to Weston where he remained until the latter part of September, 1967. A report from the Clinical Director of Weston State Hospital indicates that, though petitioner had a history of alcoholism and his I.Q. was in the dull normal level, he was not psychotic and it was recommended that he be returned to the court. Petitioner's condition was diagnosed in this report as sociopathic personality disturbance, antisocial reaction with alcoholic addiction. On October 13, 1967, petitioner again went before the trial court and was, at that time, sentenced to fifteen years in the penitentiary.

 Considering first petitioner's allegation that he was denied the right to employ counsel at his preliminary hearing, it should be noted that he does not allege, nor does the evidence reveal, any prejudice to his case as a result of this alleged denial of counsel. It is apparently petitioner's position that the denial of counsel is, *per se*, a ground for relief by way of habeas corpus. In West Virginia, the purpose of the preliminary hearing is to determine whether there is probable cause for detaining the defendant, W.Va.Code, Section 62-1-8 (Michie 1966), and it is provided by statute that the defendant shall not be called on at the examination to plead to the charge. W. Va.Code, Section 62-1-8 (Michie 1966). Further, it is specifically provided that statements made by the defendant as a witness upon legal examination may not be admitted as evidence against him in a criminal prosecution, W.Va.Code, Section 57-2-3 (Michie 1966), and this provision has been interpreted so as to exclude any statements made by an accused at a preliminary examination before a justice of the peace. State v. May, 62 W.Va. 129, 57 S.E. 366 (1907). Thus, the preliminary hearing, not being a

"critical stage" in criminal proceedings in West Virginia, in the absence of any showing of prejudice resulting from the absence of counsel at the preliminary hearing, petitioner is not entitled to relief by way of federal habeas corpus. Guthrie v. Boles, 261 F.Supp. 852 (N.D. W.Va.1967).

■ Insofar as petitioner's claim of a coerced plea of guilty is concerned, the petitioner has, by his own testimony before this Court, rebutted that allegation by testifying that the choice to plead guilty was made by him after obtaining the advice of his court-appointed attorneys. The prosecuting attorney never conferred directly with petitioner, and the only connection he had with the case was to inform petitioner's attorneys that in the event petitioner pleaded guilty he would not prosecute other charges pending against him. Such action falls far short of promises or threats which have the result of depriving a plea of the character of a voluntary act, Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed. 2d 473 (1962). In this case it appears that petitioner, with all of the facts before him, including the advice of competent counsel,[1] voluntarily elected to plead guilty to the charge of armed robbery, and, in the absence of other extenuating circumstances, he must be held bound to that decision. Brown v. Beto, 377 F.2d 950 (5th Cir. 1967); Lassiter v. Turner, 279 F.Supp. 231 (E.D.N.C.1968).

■ Petitioner claims that the refusal of the trial judge to permit a mental examination prior to entering a plea deprived him of his constitutional rights, however, it is difficult for the Court to accept such a contention since, upon the facts of this case, it is evident that at the time he pleaded guilty to the charge of armed robbery he was capable of understanding the proceedings against him and to confer intelligently about the case with his attorneys. This was the opinion of his attorneys and the opinion of the trial judge, and ultimately it was also the opinion of the psychiatrists who examined him at the Weston State Hospital. In any event, the denial of a motion for pre-trial examination cannot be assailed except for abuse of discretion, Thomas v. Cunningham, 313 F.2d 934, 940 (4th Cir. 1963), and in this case we find no such abuse. If, of course, the examination at the Weston State Hospital had revealed that petitioner was incompetent, then his attorneys could have made a motion to withdraw the plea of guilty and, in that event, if the judge had denied the motion there might be some substance to petitioner's alleged denial of due process. Such is mere speculation in this case, however, since, in fact, petitioner was found to be competent and it is difficult to see how any prejudice could result from the fact that this finding was made by a psychiatrist after the plea rather than before. See United States ex rel. Smith v. Baldi, 344 U.S. 561, 566–567, 73 S.Ct. 391, 97 L.Ed. 549 (1953).

■ With respect to petitioner's final allegation, that he was not sane at the time he committed the crime, it appears that petitioner's position is that because of consumption of alcohol and drugs he was unable to form the requisite intent to commit the crime with which he was charged. Thus, petitioner actually alleges intoxication rather than insanity, however, as we have seen, petitioner pleaded guilty to the charge thereby admitting the facts charged in the indictment. Petitioner also stated to this Court at the hearing that he realized what he was doing when he robbed the drug store. Under these circumstances, we find little merit in the contention that he was unable to form the requisite intent. In any event, petitioner questions, by this allegation, not the legality of his detention, but his guilt or innocence. The question of guilt or innocence, however, cannot properly be raised upon petition for ha-

1. Though a frequent charge in habeas corpus petitions, petitioner has not in this case alleged that he received ineffective representation of counsel. To the contrary, he indicated to the Court at his hearing that he was satisfied with the representation of the two attorneys appointed by the Court.

beas corpus and it is not a ground for relief under such a writ. Jones v. State of Montana, 231 F.Supp. 531 (D.C.Montana 1964); Owsley v. Cunningham, 190 F.Supp. 608, 614 (E.D.Va.1961).

For the foregoing reasons the Court finds that the petition is without merit in all its aspects and that habeas corpus relief must be denied.

This memorandum opinion shall constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure.

The Court expresses its appreciation to Mr. Menis E. Ketchum, of the Huntington Bar, for accepting the assignment to represent the petitioner herein without expectation of pay and for his diligence in carrying out such assignment.